JOHN H. BIRD, RESPONDENT, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK AND S. HASTINGS GRANT, COMPTROLLER OF THE CITY OF NEW YORK, APPELLANTS.

*City of New York — power of the board of estimate and apportionment to transfer unexpended balances of appropriations — 1882, chap. 410 — The commissioners of accounts have no power to appoint clerks.*

The estimate of appropriations for the city of New York, for the year 1884, contained no appropriation for the hire of clerks for the commissioners of accounts, an appropriation therefor having been stricken from the provisional estimate.

February 9, 1884, a resolution was adopted by the board of estimate and apportionment, by a majority vote and against the vote of one member, transferring unexpended balances of appropriations for cleansing markets in 1873, 1875 and 1876, and for contingencies in the comptroller's office in 1874, 1875 and 1876, to the appropriation for the commissioners of accounts "for clerk hire and contingencies."

*Held,* that the board had no power to direct such transfer to be made, and that an order restraining the transfer was properly granted.

Sections 47 and 207 of the Consolidation Act (chap. 410 of 1882) regulating the expenditures of the various departments and authorizing the transfer of appropriations to "such other purposes or objects for which the appropriations are insufficient, or such as may require the same," were intended to help out deficiencies in appropriations already made, and not to empower the board to make at its will and pleasure new or additional appropriations, and least of all to restore rejected ones, by the process of transferring unexpended balances.

It was the intention of the said section (207) to provide for the disposition of the unexpended balances, annually, by transferring them to deficient appropriations, or applying them in diminution of the appropriations for the like purposes for the next year, or transferring them to the general fund of the city for the reduction of taxation.

The commissioners of accounts have no power to appoint subordinates or clerks to be paid for out of the city treasury, and no authority exists in the city or any of its departments or boards to appropriate or pay any money for such services.

APPEAL from an order of the Special Term continuing an injunction order.

*D. J. Dean,* for the appellants.

*Charles E. Miller,* for the respondent.

DAVIS, P. J. :

This action was brought by the plaintiff as a citizen, resident and taxpayer of the city of New York under the provisions of section 1925 of the Code of Civil Procedure, to prevent waste of the funds of the city.

It is charged, in substance, that the board of estimate and apportionment, assuming to act under section 207 of the Consolidation Act (1882, chap. 410), have unlawfully directed the transfer of, and the defendants are about unlawfully to transfer, certain unexpended balances of the appropriations of former years *for other purposes,* to the credit of the commissioners of accounts for clerk hire and contingencies. It appears that no appropriation for those purposes for the year 1884 was made by the board of estimate and apportion-

ment, but that one proposed therefor was stricken out by the board. At a meeting of the board on the 9th of February, 1884, a resolution was offered that the sum of $6,741.10, be transferred from unexpended balances of appropriations for cleansing markets in 1873, 1875 and 1876, and for contingencies in the comptroller's office in 1874, 1875 and 1876, "to the appropriation, salaries, commissioners of accounts, 1884, for clerk hire and contingencies." The resolution was adopted by a majority vote, one member of the board voting against it. The injunction order restrained this transfer. This action of the board was in our opinion wholly unauthorized. Section 189 of the Consolidation Act, provides that the board of apportionment must annually, between the first day of August and the first day of November, make a provisional estimate, *by a unanimous vote*, of the amount to be expended during the next following year. This provisional estimate becomes final after having been submitted to the board of aldermen, and reconsidered by the board of estimate and apportionment. It is to be published as prescribed by the act; and the taxpayers of the city have the right to be heard upon it. When these several steps have been duly taken, the apportionment becomes *final* in its *items*, and final also in the amount of those items, except as the sum appropriated for such items may be enlarged by the transfers of unexpended balances, as permitted in the cases specified by section 207 of the act. It is out of all reason to suppose that where an item of appropriation has been rejected by the board, so that it is excluded from the list of appropriations when it becomes final under the law, the board may subsequently at any time in the year for which the appropriations are made, reinstate it by a majority vote under the form and pretext of transferring unexpended balances under the provisions of section 207.

To allow this is to strike down the safeguard of unanimity which the law requires before an appropriation for such an item can be made. The strong protection which that unanimity throws around the taxpayers is annihilated if such a power be sanctioned, for it is manifest that a proposed odious appropriation, which has been defeated by a vigorous resistance of the taxpayers resulting in its failure by want of unanimity in the board, can at any time after the list of appropriations has become final, be reinserted by a simple majority, by voting to transfer unexpended balances to such

defeated object, if the act be so construed as to permit that course. This is the ground on which the Special Term sustained the injunction, and we think it both morally and legally sound.

Sections 47 and 207 of the Consolidation Act, read together, constitute a system of protection against abuses and not a scheme for their commission. There is no intention in the latter to create a *post mortem* power of reviving rejected appropriations. The design was to help out deficiencies in appropriations already made, and not to empower the board to make at its will and pleasure new or additional appropriations, and least of all to restore rejected ones by the process of transferring unexpended balances. The argument that would tolerate this depends upon a misconstruction of section 207.

The headlight, so to speak, of the city taxation, is found in section 47, which is as follows: "It shall be the duty of the heads of all departments of said city and of all boards and officers charged with the duty of expending or incurring obligations payable out of the moneys raised by tax in said city so to regulate such expenditures for any purpose or object that the same shall not in any one year exceed the amount appropriated by the board of estimate and apportionment for such purpose or object; and no charge, claim or liability shall exist or arise against said city for any sum in excess of the amount appropriated for the several purposes."

Every other provision of the act touching taxation must be read by the light of this section, otherwise its plain and salutary rule of protection is in danger of being merged in the caprice of official discretion — the very evil sought to be guarded against. The gross sum of expenditures cannot therefore exceed the gross sum of the appropriations. But the act contemplated the probability that an appropriation made for a department might be found by the head of the department to be in excess of the amount actually required for the purposes or objects of the appropriation, and that the amount appropriated for some other purpose or object might turn out to be insufficient; and to meet such a condition of things it empowered the board of apportionment to provide for the exigency by transferring the ascertained excess, or so much thereof as might be necessary, to meet the ascertained deficiency. This power is expressed in these words:

" The board of estimate and apportionment shall have the power at any time to transfer any appropriation for any year which may be found, by the head of the department for which such appropriation shall have been made, to be in excess of the amount required or deemed to be necessary for the purposes or objects thereof to such other purposes or objects for which the appropriations are insufficient, or such as may require the same." The terminal words, " or such as may require the same," are claimed to confer unlimited power upon the board to transfer excess of appropriations to any purpose it may please without regard to the question whether or not an appropriation had been made or refused for such purpose. But as we have seen, this construction is at war with the system which limits expenditures to actual appropriations, and forbids all others.

It also opens a wide door to frauds and abuses because it will only be necessary, if that construction prevails, for the board to make excessive appropriations for numerous legitimate purposes in order afterwards to lay their hands on large sums to be transferred to uses purely in their discretion, for good or evil. This is a possible wrong against which the act intended rigidly to guard. The words " or such as may require the same " have reference to the preceding words, " to such other purposes or objects for which the appropriations are insufficient," and the phrase is to be understood as though it read, *or such of them as may require the same;* the intention being that when several objects and purposes are embraced in the same appropriation, a part of which are satisfied and a part are deficient, the transfer may be to the deficient portion and not for all the purposes and objects of the original appropriation as the preceding language might in strictness require.

We entertain no doubt therefore that the power of transfer of excesses given to the board is confined to and can only be exercised in cases where appropriations actually made have proved deficient, and that the board have no authority to use excesses for new objects or purposes, or to make defeated appropriations successful.

A careful examination of the whole of section 207 shows, we think, that it provides for the disposition of excesses, annually, as they arise. Three modes are pointed out: one to transfer to deficient appropriations; the second to apply at the end of each current fiscal year the surplus then existing to diminish the appropriation for the

like purpose for the next succeeding year; and thirdly, if neither of these have been done, to transfer such surplus to the general fund of the city and apply the same to the reduction of taxation. The due exercise of this authority by the board makes the fiscal system a perfect one and preserves intact the limitation on taxation and expenditure which, as we have seen, is its cardinal principle. We are of opinion, therefore, that no power existed in the board to seize upon unexpended balances which accrued eight and ten years ago and transfer or apply them to the purposes named in their resolution. If those balances existed they belong to and should be at once transferred to the general fund of the city for the purpose of reducing taxation. To have kept them unused for so great a length of time was a neglect of duty on the part of the officers having the sums in charge.

But it is insisted also on the part of the plaintiff that no power existed to appropriate moneys to pay salaries to clerks of the commissioners of accounts, because there is no authority of law for the appointment or employment of such clerks at the public expense.

The act under which the appointment of commissioners of accounts is made is as follows:

" The mayor shall, from time to time, appoint and remove, at pleasure, two persons, who, together with the president of the department of taxes and assessments, shall be commissioners of accounts. It shall be their duty, once in three months and oftener if they deem it proper, to examine all vouchers and accounts in the offices of the comptroller and chamberlain, and to make and publish in the City Record a detailed statement of the financial condition of the city showing the amount of its funded and floating debt, the amount received and expended since the last preceding report, with a classification of the sources of revenue and expenditure and such other information as they shall deem proper. They shall, from time to time, make an examination of the expenses of the several departments and offices, and make such recommendations to the board of estimate and apportionment and other offices with reference thereto and particularly with reference to salaries and duties as they deem advisable. Any one of such commissioners shall have authority, at any time, to make any such examination, and such two appointed commissioners shall be paid a reasonable compensation,

to be fixed, as other expenditures, by the board of estimate and apportionment, not exceeding three thousand dollars each annually." (Sec. 110 of the Consolidation Act.)

Our attention is called to no other act of the legislature affecting these commissioners. They are not a department or bureau of the city government. The two commissioners are to be appointed and removed at the pleasure of the mayor. They have no defined term of office and their compensation, except as to its maximum, is wholly in the discretion of the board of estimate and apportionment. We look in vain for any provision in the act above cited, or in any other statute, of power to appoint subordinates or clerks at public expense to perform or assist in the performance of any of the duties or functions of their office. Their duties of course, to some extent, involve clerical labor; but they are not clerical or perfunctory. They require intelligence, experience, and personal action and judgment. In the absence of all legislation on the subject it is argued that the duties are such as require clerical aid, and therefore, by necessary implication, the commissioners may appoint or employ all requisite clerks at salaries or compensations to be paid by the city. But no such implication is found in the act itself; that is, in any words of the statute touching the mode of performing the duties and out of which it necessarily arises. It is only found in the nature of their work and increases or diminishes as they may amplify or restrict it. That is to say, it rests upon the argument of convenience. It is useful and convenient to have clerks or assistants, therefore they may appoint or employ them; therefore the city is bound to pay them salaries or compensation in addition to the authorized compensation of the commissioners themselves, and therefore the board may appropriate whatever sums they deem necessary or convenient for that purpose. This may be sound reasoning when pressed upon the legislature as ground for the enactment of laws permitting the appointing of subordinates and the payment of salaries to such officers or employes, but it is not entitled to the slightest force when addressed to a court as authority for raising money by taxation in the absence of statutory enactment. Whoever approaches the public treasury to demand compensation for official duties or services must come with the warrant of law in his hands. Places and officers and offices to be paid by public taxation are not to be

created by implications from convenience or necessity however clearly they may exist, but only by legal enactment. Any other rule strips the taxpayers of legal protection and leaves them at the mercy of somebody's discretion or indiscretion outside of the law-making power of the people; and that is one definition of tyranny, because in bad hands it is capable of great abuse and oppression.

The only escape from that danger is to hold that neither office, nor officer, nor title to salary or pay out of the public funds can exist or arise by implication of facts without the express enactment of law. In adherence to this rule as a fundamental maxim there is safety; in departure from it there is not merely danger, but the certainty of "a multitude of new offices," and "swarms of officers to harass our people and eat out their substance." As we understand the law there is no right or authority in the city of New York, or in any of its departments or boards, to appropriate or to pay or suffer any person to receive, compensation for official duties or services without the sanction of some express law or enactment.

In the absence of such enactment the board of estimate and apportionment had no power to order the transfer of unexpended balances for the purposes mentioned in the resolution.

The order of the Special Term continuing the injunction is therefore affirmed, with the usual costs and disbursements.

DANIELS, J., concurred.

Present — DAVIS, P. J., and DANIELS, J.

Order affirmed, with ten dollars costs and disbursements.